**AFFIRMED; Opinion Filed November 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01523-CR

### MARTIN ROBELES JIMENEZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 382nd Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 2-13-378**

## OPINION

Before Justices Bridges, Francis, and Myers[1]
Opinion by Justice Myers

Appellant Martin Robeles Jimenez was convicted by a jury of possession of a controlled substance, methamphetamine, in an amount of four grams or more but less than 200 grams, with the intent to deliver. The jury imposed a punishment of fifteen years in prison and a $5,000 fine. In two issues, appellant argues the trial court erred by admitting text messages allegedly sent by appellant because they were not properly authenticated and contained inadmissible hearsay. We affirm.

### BACKGROUND

On April 28, 2013, Rockwall County Sheriff's Deputy Stephen Young stopped appellant's vehicle at 2:30 a.m. for failing to maintain a single lane of traffic. Appellant was

---

[1] Justice David Lewis was a member of the original panel and participated in the submission of this case; however, he did not participate in this opinion. Justice David Bridges has reviewed the record and the briefs in this case. *See* TEX. R. APP. P. 41.1(a).

unable to produce a valid driver's license or proof of insurance. He denied owning the vehicle, claiming he borrowed it from Jose Flores, an individual he had known for about six months. There was a single key in the ignition and the car turned out to be registered to someone other than the person appellant named. Appellant stated that he was traveling to Greenville to see his ex-wife and children but was unable to provide an exact destination address.

With appellant's verbal consent, Deputy Young searched the vehicle. A digital scale was found in plain view in the driver's side door pocket. In the trunk, underneath the carpet, Deputy Young discovered an apparently discarded toilet paper roll with a wad of newspaper inside. Within the newspaper Deputy Young found a bag containing 24.09 grams of methamphetamine. Also discovered in the vehicle was a cell phone, a pair of pants, and a piece of paper found in the driver's side visor with the name Jose Moreno and a street address in Greenville.[2]

## DISCUSSION

### Authentication

In his first issue, appellant contends the trial court abused its discretion by admitting text messages allegedly sent by appellant because those messages were not properly authenticated under rule 901 of the Texas Rules of Evidence. The State responds in part that appellant failed to preserve this issue for appellate review.

Police officers seized the cell phone found in appellant's vehicle at the time of the stop. Appellant was the only person in the vehicle. Pursuant to a search warrant, officers obtained screen shots of text message conversations between appellant and two third parties, "Abundio" and "Moroco." The text messages that were admitted at trial—some of which are in English, others in Spanish—read (along with the respective translations) as follows:

---

[2] Deputy Young testified that "[w]e used our research databases to try to look up" the specific street address listed on the paper, but "we couldn't find anything on the address." He also noted that officers did not attempt to research the name "Jose Flores" because it was a common name in the State of Texas, and without a birth date "it's hard to narrow it down."

State's Exhibit Number 14:

APPELLANT (sent April 27, 2013, at 1:47 a.m.): "Is rita there with you"
ABUNDIO (received April 27, 2013, at 1:48 a.m.): "No she went home say u got any shit and a pipe"

State's Exhibit Number 15:

APPELLANT (sent April 27, 2013, at 1:50 a.m.): "Im going to get sam"
ABUNDIO (received April 27, 2013, at 1:55 a.m.): "K"

State's Exhibit Number 16:

ABUNDIO (received April 27, 2013, at 2:15 a.m.): "When u coming this way"
ABUNDIO (received April 27, 2013, at 6:57 p.m.): "Call me now its in portin emeg"

State's Exhibit Number 17:

ABUNDIO (received April 27, 2013, at 8:59 p.m.): "Say where u at now"
ABUNDIO (received April 27, 2013, at 10:21 p.m.): "OK give me 20 to 30 min"

State's Exhibit Number 18:

MOROCO (received April 27, 2013, at 8:18 p.m.): "No pues hai para la otra" (translated into the record as: "No, well, for next time")[3]
MOROCO (received April 28, 2013, at 12:14 a.m.): "Como andamos carnal" (translated into the record as: "How are we doing, bro?")

State's Exhibit Number 19:

APPELLANT (sent April 28, 2013, at 12:19 a.m.): "Bien tranquilos lla fui a ber al cnuy y ledi tu encargo" (translated into the record as: "Very tranquil. I went to go see Chewy, and I gave him your"—like "your delivery")
MOROCO (received April 28, 2013, at 12:21 a.m.): "Ok carnal gracias que dijo" (translated into the record as: "Okay, bro. Thank you." "What did he say?")

State's Exhibit Number 20:

APPELLANT (sent April 28, 2013, at 12:22 a.m.): "Orale carnal ya esta" (translated into the record as: "All right, bro. It's good")
MOROCO (received April 28, 2013, at 12:23 a.m.): "Mucho Ojo" (translated into the record as: "Be on the look-out")

State's Exhibit Number 21:

---

[3] The translations were provided by Deputy Abel Chavez of the Rockwall County Sheriff's Department, who testified that he was fluent in the Spanish language.

APPELLANT (sent April 27, 2013, at 1:25 a.m.): "Were you at i need to took to you went i get to greenville"
ABUNDIO (received April 27, 2013, at 1:31 a.m.): "Im at lucy lus"

State's Exhibit Number 22:

APPELLANT (sent April 27, 2013, at 1:34 a.m.): "Ok i coll you wen i on may wey"

When the State originally offered into evidence a phone examination report that detailed all of the text messages recovered from the cell phone, appellant objected on the basis of hearsay, remoteness and relevancy, arguing that "[t]he information which was dumped onto this document, there's some unavailable dates on here that cannot be attributed" to this case. The trial court sustained the relevancy objection, but admitted the exhibit for record purposes. The State later offered some of the text messages into evidence as exhibits 14 through 22—depicted as screen captures of the text messages. Appellant again objected regarding "hearsay, relevance in relationship to the case in chief, remoteness in time as to some of these conversations." These objections were overruled and the text messages admitted.

To preserve error for appeal, a party must present to the trial court a timely and specific objection. TEX. R. APP. P. 33.1. Furthermore, the complaint on appeal must comport with the objection at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). In addition, the objection must be made at the earliest possible opportunity. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

As appellant acknowledges in his brief, his trial objections to the text messages were hearsay, relevance, and remoteness. However, the argument on appeal is that the trial court abused its discretion by admitting the text messages because they were not properly authenticated under rule 901. The trial objection, therefore, does not comport with the argument on appeal, and appellant does not cite, nor have we found, authority suggesting that a hearsay, relevance or remoteness objection would preserve for appellate review a complaint regarding

–4–

improper authentication under rule 901.  As a result, the alleged error has not been preserved for our review.  *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990) ("Generally, error must be presented at trial with a timely and specific objection, and any objection at trial which differs from the complaint on appeal preserves nothing for review."); *Rios v. State*, 263 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2005, pet. dism'd) (hearsay objection insufficient to preserve claim of Confrontation Clause violation); *Adkins v. State*, No. 05–02–00680–CR, 2003 WL 21267195, at *2 (Tex. App.—Dallas June 3, 2003, pet ref'd) (mem op., not designated for publication) (objection at trial that proper predicate had not been met to admit photographs did not preserve appellate complaint that evidence should not have been admitted on hearsay grounds).  We overrule appellant's first issue.

### *Hearsay*

In his second issue, appellant argues that the trial court abused its discretion by admitting the text messages because they contained inadmissible hearsay.  The State responds that the trial court did not abuse its discretion or, alternatively, that the error was harmless.

As with all questions of admissibility of evidence, we review a trial court's rulings on hearsay objections for an abuse of discretion.  *Saavedra v. State*, 297 S.W.3d 342, 349 (Tex. Crim. App. 2009).  A trial court abuses its discretion when a decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree.  *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  A trial court's ruling on the admissibility of evidence will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

"Hearsay" is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  TEX. R. EVID.

801(d). Hearsay is generally inadmissible unless it falls within a recognized exception to the hearsay rule. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005); *see also* TEX. R. EVID. 802.

One such exception is for statements against interest. TEX. R. EVID. 803(24). "The exception for statements against pecuniary, penal, or social interest stems from the commonsense notion that people ordinarily do not say things that are damaging to themselves unless they believe they are true." *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008). "Thus, a reasonable person would not normally claim he committed a crime, unless it were true." *Id*. "The rule sets out a two-step foundation requirement for admissibility." *Id*. "First, the trial court must determine whether the statement, considering all the circumstances, subjects the declarant to criminal liability and whether the declarant realized this when he made that statement." *Id*. "Second, the court must determine whether there are sufficient corroborating circumstances that clearly indicate the trustworthiness of the statement." *Id.* at 891.

In addition, rule of evidence 801(e) identifies circumstances in which certain statements are not hearsay. *Paredes v. State*, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004). A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. TEX. R. EVID. 801(e)(2)(A); *see Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999).

On appeal, appellant cites *Black v. State*, 358 S.W.3d 823 (Tex. App.—Fort Worth 2012, pet. ref'd), to support his argument that the text messages were hearsay because it was not known whether appellant was the person who sent them. In *Black*, officers served a felony warrant at an apartment for another individual, and they also found Black inside the apartment; the occupants of the apartment informed the officers that a laptop bag and glasses case inside the apartment belonged to Black. *Id*. at 825–26. In the laptop bag, officers found Black's identification, a

small baggie of marijuana, and a piece of paper with numbers written on it. Officers also found several baggies containing methamphetamine in the glasses case and a baggie containing methamphetamine next to a chair in the living room. *Id*. at 826. During a search of Black's person after he was arrested, the officers found a cell phone. *Id*. The officers obtained a search warrant to examine the contents of the cell phone. On the phone, officers saw text messages referring to drug transactions and photographs that appeared to depict methamphetamine. *Id*. The court of appeals concluded that a picture on the cell phone of what appeared to be methamphetamine was not a statement, and therefore not hearsay. *Id*. at 831. But the court concluded the written text messages on the phone were hearsay and that no hearsay exception justified their admission. *Id*. at 831–32. Because there was no showing appellant wrote or ratified any of the messages, and no showing the messages were written while the cell phone was in appellant's possession, the messages did not qualify as statements made against his penal interest and did not fall that exception to the hearsay rule. *Id*. at 832. Ultimately, the court determined that the error was harmless. *Id*. at 832–33.

The appellate court, however, did not address whether the identity of the sender could have been authenticated through circumstantial evidence, as discussed in *Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012). In *Tienda*, the State offered evidence associated with three MySpace personal profiles, including account information and printouts of profile pages on which photographs, comments, and music were posted. *Id*. at 642. Tienda objected that the State "had not laid the proper predicate to prove that the profiles were in fact what the State purported them to be, namely, declarations that the appellant himself had posted on his personal MySpace pages." *Id*. at 635. The court of criminal appeals concluded there was "ample circumstantial evidence—taken as a whole with all of the individual, particular details considered in combination—to support a finding that the MySpace pages belonged to the

appellant and that he created and maintained them." *Id*. at 645. The court noted that there were numerous photographs of defendant with his unique arm, body, and neck tattoos, as well as his distinctive eyeglasses and earring. *Id*. There was also a reference to the victim's death and music from his funeral, and references to the defendant's gang and messages referring to the shooting. *Id*. While the court acknowledged it was conceivable that someone else had fabricated and maintained the MySpace pages, the court explained that this was a "scenario whose likelihood and weight the jury was entitled to assess." *Id*. at 646.

Additionally, in *Manuel v. State*, 357 S.W.3d 66 (Tex. App.—Tyler 2011, pet ref'd.), the court concluded that an e-mail is properly authenticated if its appearance, contents, substance or other distinctive characteristics, taken in conjunction with circumstances, support a finding that the document is what its proponent claims. *Id*. at 75. Text messages can be authenticated in the same fashion. *Id*.

In this case, the cell phone where the objected-to text messages were discovered was found in a vehicle in which appellant was the driver and sole occupant. The text messages were sent or received close in time to the offense—within 24 hours. In State's exhibit 14, Abundio asked appellant if he had "any shit and a pipe." Appellant responded in State's exhibit 15, "Im going to get sam," to which Abundio texted, "K." In State's exhibit 19, as translated, appellant texted Moroco that he "went to see Chewy" and gave him "your delivery." Moroco responded, "Okay, bro. Thank you." He asked, "What did he say?" In State's exhibit 20, Moroco advised appellant to "[b]e on the look-out." State's exhibit 21 showed appellant would contact Abundio when he arrived in Greenville, and this was consistent with appellant's statement to Deputy Young that he was traveling to Greenville. Also, the paper found in the driver's side visor had a Greenville street address. Appellant was found in possession of approximately 24 grams of methamphetamine and a drug scale. Based on the record in this case, the trial court could have

–8–

reasonably determined that the text messages were conversations between the appellant and two individuals discussing a potential drug transaction. The trial court could have found that the text messages, which were offered against appellant, contained his statements in either a representative or individual capacity. Thus, the text messages sent by appellant were not hearsay; instead, they constituted an admission by a party and were properly admitted into evidence under rule 801(e)(2)(A). The text messages sent by Abundio and Moroco were admissible as statements against interest under rule 803(24). *See* TEX. R. EVID. 801(e)(2)(A), 803(24); *Lozano v. State*, No. 02–06–379–CR, 2007 WL 4216349, at *7–8 (Tex. App.—Fort Worth Nov. 29, 2007, no pet.) (mem. op., not designated for publication) (text messages contained appellant's statements and were properly admitted as party admission under rule 801(e)(2)(A)); *Everett v. State*, No. 14–01–00588–CR, 2002 WL 534124, at *2 (Tex. App.— Houston [14th Dist.] April 11, 2002, pet. ref'd) (not designated for publication) (portions of compiled electronic instant messages authored by appellant and sent to fourteen-year-old child, detailing a sexual relationship between them, constituted an admission, and were properly admitted under rule 801(e)(2); the messages authored by the child and sent to appellant were hearsay, but were properly admitted as statements against interest under 803(24)). We therefore cannot say that the trial court abused its discretion by overruling appellant's hearsay objection to State's exhibits 14 through 22.

Furthermore, even if we assume that the trial court erred by admitting the text messages, the error, if any, was harmless. The improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affected an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Garcia*, 126 S.W.3d at 927; *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.

App. 1997). An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Black*, 358 S.W.3d at 832.

Setting aside the allegedly inadmissible text messages, the jury heard testimony that appellant was the driver and sole occupant of the vehicle where the cell phone was found. Appellant was not able to produce a driver's license or insurance, and although he told Deputy Young that he was traveling to Greenville to visit his ex-wife and children, he could not provide the deputy with a physical destination address other than "Greenville." Deputy Young discovered approximately 24 grams of methamphetamine hidden in the vehicle's trunk, and the methamphetamine itself was admitted without objection. A digital scale, consistent with the type of scale used to weigh narcotics or marijuana, was found in plain view in the driver's side door pocket, adjacent to appellant. Appellant was operating a vehicle he did not own, which is a tactic often used by individuals transporting drugs. He told the deputy that the vehicle was registered to Jose Flores, but the actual registered owner was Michelle Repass out of Farmersville, Texas. There was only one key in the ignition, which was another possible indicator of drug trafficking activity. Deputy Hank Havens, a drug interdiction expert with the Rockwall County Sheriff's Office, testified that the street value of the methamphetamine was up to $4800, and that it was unlikely someone would leave narcotics of that value in the car without appellant's knowledge. Deputy Havens testified that 24 grams of methamphetamine was an amount commonly seen in intent-to-deliver cases, and that it was far too much for personal use. Appellant also told Deputy Young that he borrowed the car from Jose Flores for two days, and had done so often. Deputy Havens testified it was common for drug traffickers to be driving a car that did not belong to them. We further note that while the text messages supported the State's theory that appellant was trafficking in illegal substances, they did not refer specifically to the type or amount of

drugs, the place of sale, or other details of the alleged offense. Excluding the evidence in State's exhibits 14 through 22, there is sufficient evidence on which the jury could have found appellant guilty of the charged offense beyond a reasonable doubt. After carefully reviewing the record, we therefore conclude that the error, if indeed there was one, had no or very slight effect on the verdict. Accordingly, the error, if any, was harmless. We overrule appellant's second issue.

The trial court's judgment is affirmed.

/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131523F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MARTIN ROBELES JIMENEZ, Appellant

No. 05-13-01523-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 382nd Judicial District Court, Rockwall County, Texas
Trial Court Cause No. 2-13-378.
Opinion delivered by Justice Myers.
Justices Bridges and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of November, 2014.